Fourth case this morning is Watkins v. Trans Union. Mr. Brown. Good morning, and may it please the court. My name is William Brown, I'm with the law firm of Shuckett & Associates, and we represent TransUnion LLC in this matter, the defendant appellant. This appeal raises the question as to what the proper standard for attorney disqualification is in the case of conflict of interest. It's said somewhat differently, when is it appropriate for an attorney to sue a former client? For the past three plus decades, this was a matter of well-settled law in this circuit. Why isn't it governed by Rule 1.9 of the Indiana Rules of Professional Conduct in light of the Southern District's Rule, I believe it's 83-5? Until the ruling in this case late last year, it was commonly believed that this court's substantial relationship test and Rule 1.9 were not contradictory, that they were read So I would think the answer is that they both apply. Well, doesn't that pose a problem? Our case law, for example, was based on the old disciplinary rules and the canons, including Canon 9, that said you should avoid even an appearance of impropriety, a standard that was adopted by the QTAC Commission in the introduction of the Rules of Professional Conduct. Well, the Rule 1.9, which was adopted in 1987, has not been found by any court to have changed the relevant case law. Really? You don't think there was an intent with the QTAC Commission to change these rules on conflicts? Not with respect to substantial relationship. Rule 1.9 uses that term, substantial relationship, and this court's case law is instructive in terms of understanding what that means, going back to the Westinghouse decision and later to LaSalle and Analytica. As a practical matter, does it make any difference if this has been 15 years ago or 20 years ago that you represented him, the representative of the TransUnion? The courts have held that the... Well, no, I'm not asking what the courts have held. You tell me. Does it make any difference? Under the facts of this case, no. So this is a lifetime ban as far as your client is concerned. Can never represent anybody else with the TransUnion. Well, not until... Well, after 27 years, the situation may be different than it is now, but there's no indication in the record that anything has changed significantly, and the standard used with the passage of time is whether or not the information, the confidential information that he garnered has been rendered obsolete. Well, as Judge Hamilton pointed out, though, the Southern District of Indiana has a provision and now it says it's in the same or substantially related matter, and it isn't, is it? Yes, very much so. Same financial obligation? I don't follow. It's not the same case in the sense of the person he's representing. Oh, no, but that's not what the rule said. Even the portion that your Honor just read referred to the subject matter being similar. This is not a case where Mr. Chento represented TransUnion on a slip and fall. It represents another person in the same or substantially related matter. And this is substantially related. So how? They're all cases under the FCRA. How is this substantially related? Because this is the exact issue that Mr. Chento defended TransUnion on for four years, 4,200 hours, 250 cases. Collection of money. Violation of the Fair Credit Reporting Act. The Fair Credit Reporting Act has two essential elements. The first is 1681EB, which says that the credit reporting agencies like TransUnion have to maintain reasonable procedures to ensure maximum possible accuracy. The other provision is 1681I that says that when a dispute is received from a consumer, the CRA has to perform a reasonable reinvestigation. There are broad principles at issue here that have not changed at all. The statute hasn't been amended for one thing. So are there the procedures used to investigate and to prevent errors? Don't those have to be disclosed to plaintiffs who sue under the FCRA? Well, the broader matters, but we're talking about things here, given the intimacy of the relationship where you have, for example, opinions of the employees as to whether or not the policies are effective. Opportunities where maybe they discussed changing the policies. So what do we do with the comment, the district court held an evidentiary hearing here, correct? Correct. And made findings. And we've got this advice in the comment to rule 1.9. Information that has been disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying, right? Sounds like there's going to be a lot of that. And information acquired in a prior representation may have been rendered obsolete by the passage of time. A circumstance that may be relevant in determining whether two representations are substantially related. And in the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation. And it goes on from there. The district court was paying pretty close attention to those exact issues. Where did he go wrong, in your view? I think he went wrong in applying the wrong standard. I think the standard that applies is not the substantial risk standard that the court created. We're talking about a rule, 1.9, that became effective in 1987. And a comment that was added sometime in the area of 2005. Since then, numerous courts have ruled on this question, and they all found this court's case law in Westinghouse, Analytica, and LaSalle to be totally consistent with 1.9. I think that comment is another way the drafters were trying to give guidance to practitioners as to what a substantial relationship is. I don't think it was meant to create a new test. There's a body of Indiana case law interpreting and applying rule 1.9. And it was inexplicable to me why the parties didn't refer to that case law, since the Indiana local rules and federal court incorporate the state code of conduct. And presumably, it's body of case law in state court interpreting it. In particular, there's decisions from the Intermediate Court of Appeals. That work in your favor, in terms of how this 1.9 legal standard is applied, and the relationship between it and the pre-existing federal standard at common law. In particular, a case called XYZDO versus Sykes, no relation. Involving a medical malpractice suit against a doctor, who then sought disqualification of the plaintiff's counsel's firm. Because his prior lawyer in six earlier medical malpractice suits was now working at that firm. And just the identity of the litigation, it was clearly a brand new suit for medical malpractice, not factually interrelated to the others. But the fact that his prior lawyer, who defended him in six other medical malpractice suits, was now working for the plaintiff's malpractice firm, was enough. Because the nature of the representation was sufficiently the same to make it substantially related under the rule, and thereby give rise to the presumption of a risk that confidential and So it seems to me we have guidance from the state courts, and no one has cited it to us here. Well, going into the case, of course, both the plaintiff and the defender were under the impression that it was Analytica and LaSalle that would control. And so we cited those cases, and then a number of cases that followed, both after the rule was enacted and after the comment was issued, in which that same framework for analysis was accepted. And so that wasn't argued that anything under 1.9 in the state rule would change the analysis at all. To the contrary, it seems to me that is precisely the argument here, that 1.9 now controls, and not LaSalle and Analytica and the older federal cases. I would say that they both still apply. They've been read together by every district court that has decided this issue for 20 years. District courts often write opinions in such a way as so not to find tension between what they're doing and what prior Seventh Circuit cases have done. Even if there is such tension, and even if there's good reason for such tension, because of exactly, because of the changes in the rules. So, but you think we've got two independent sources of law here. Rule 1.9 and this body of federal common law, right? Correct, in the Leatherman decision, Judge Barker referred to as dual sources, which is how I view it. Is that, would you agree that in the state courts they would apply rule 1.9? Yes. Yeah. So we kind of have, it's not exactly an Erie Railroad problem, but it's kind of, it's at least related here. Because we would prefer to avoid situations in which the results are substantively different between state and federal courts. So why shouldn't we try to basically reconcile what we're doing with rule 1.9 in the Indiana courts? I think you can. I think you can reconcile rule 1.9 with this court's body of case law. I'm not saying there's two different standards. That's what Judge Lawrence said below. He said that there were two different standards. I'm saying that there's only one standard, and it's embodied in both 1.9 and this court's case law. And the X, Y, Z, D, O case supports you in that, by the way? That's correct, Your Honor. Except you didn't cite it. We stuck to the record below, and as I said below, we didn't get into that because it was never. It's not a factual issue, it's a legal issue. Yes, I understand that. But even Mr. Chento had been arguing, until recently, over the last five years, that LaSalle and Analytical were controlling. So we argued those. Thank you. Unless there's any other questions, I see my time is up. Good afternoon, Your Honors. I'm John Chento. I represent Richard Watkins in this appeal. An appeal which, as you know, also is very much about me. I wanted to start, I think, on the standard of review, which I was surprised we ended up disagreeing about. But as I laid out in my brief, I think the standard has to be abuse of discretion. The exception to that, in the Nouveau case that TransUnion relies on, only applies if three conditions are met, and none of the three conditions exist in this case. There are facts in dispute. There was an evidentiary hearing, and the testimony, in this case, comes from more than just affidavit. If there was a legal error, we reviewed De Novo. Or, alternatively, a mistake about the legal standard is, by definition, an abuse of discretion. And we're here, essentially, on an appeal to decide what legal standard governs. Your Honor, I would agree with that, except that TransUnion has also asked that you render a positive opinion in their favor. If they had just stuck to the legal issue that they asked for. Right. This is all a legal inquiry, predominantly. There is no requirement that the party invoking the conflict of interest actually reveal the confidential information as a factual matter in the course of litigating a disqualification motion. That's a specific premise of the rule itself. That there doesn't have to be any kind of a factual airing of the confidential information that the former client is trying to protect in order to determine whether there's a conflict of interest. So, the skirmishes in the district court in this case about discovery and making a factual record and making factual findings were sort of beside the point. This is a legal inquiry. Once the fact of the prior representation is established and the scope of the prior representation is established and the scope of the current representation is known, because that's the case before the court, then that's as far as the factual inquiry goes. And it's all a legal question about whether there's a conflict. Your Honor, I respectfully disagree. The legal wranglings over discovery all had to do with determining the scope, not just about, not about what information was actually... It seems to me there was no dispute about the scope of your prior representation of TransUnion. You were, it's outside counsel for a lengthy period of years and handled hundreds of cases for them in this area of the law, identical cases to this one, not necessarily factually identical in that they involve different plaintiffs and different transactions, but legally identical. So, you know, once that's established, nothing further of a factual nature needs to be worked out or sorted out or found by the district court, then it's a strict application of the code of conduct. I respectfully disagree, Your Honor. I think that... Well, just accept that for the time being and tell me as a legal matter why you're right. Sure. I'm right because the court finally, in this case, realized what standard needed to be applied. Now, I argued that 1.9 should be the standard that's applied all the way back to Childress. However, in Childress, I didn't realize, and neither did my counsel at the time, that there was this problem of timing with 1.9. It took my hiring Don Lundberg, a former member of the Indiana Disciplinary Commission, to point that out to the courts, and he first pointed that out in the Hobson case, although Hobson just basically rubber-stamped the opinion and relied on Childress. But it was pointed out back then. So the reason I win is because if you apply Rule 1.9, I have to win. Even Childress, if you go all the way back to Childress, which at that point, I was only seven... If you focus on 1.9, and you say you have to win under 1.9, I think that's highly debatable, based on the commentary in Rule 1.9 and based on the Indiana case law interpreting and applying it, and in particular, the XYZDO v. Sykes case, which evidently both sides are unaware of. That's the medical malpractice case that I just referred to. If the prior representation was enough to disqualify the lawyer in that case, it's clearly enough to disqualify you in this case. Six prior malpractice cases, an entirely new representation. The lawyer migrates to a different firm, an entirely new factually distinct medical malpractice case, and still the court finds that it's substantially related for purposes of the rule because there's a substantial risk that confidential factual information, as would normally have been obtained, objective tests, not factual specifics, have been obtained in the prior representation that would advance the client's position in the subsequent matter. Your Honor, I don't know about that case. Just accept that that's what the court holds. So how is your case different? Well, I keep trying to explain. My case is different because you have to understand what's involved in representing transunion, what's involved in these cases. You have to understand that in defending an FCRA case, the entire case is about the transunion's procedures. Everything about it is about the procedures. When you defend transunion and you get discovery from a plaintiff that says, why is this error on my credit file? Why is it there? You have to answer that question. How did it get there? What procedure resulted in it being there? All of that is discoverable. Every ounce of it. And so... And the fact that you come into the representation on behalf of the plaintiff knowing all that information and additionally knowing the principles who are involved in implementing the statutory duties imposed on transunion suggest that you are disqualified from suing them. I don't know. Perhaps for life. Your Honor, respectfully, I don't know any of that information. If you ask me right now, how did Mr. White... It doesn't matter subjectively. It's an objective test under the rule. Your Honor... If it could reasonably be expected that you would have come into information during the course of that many years of representation of transunion on identical types of claims, more than 200 of them, that you would have come, in the course of that time, into possession of confidential information that would assist you in representing your current client and suing your former client, you're out. Your Honor, I respectfully... And you're potentially out for life. And there was an obsolescence question in the XYZ versus DO case as well. And the court said a passage of nine or ten years was not enough to make the prior representation obsolete. Your Honor, I respectfully disagree. And I say that the only way you can come to that conclusion is if you don't understand how that representation works and what the scope of my representation was. And the only way to come to that conclusion is by not accepting that there is a difference between a malpractice case and defending an FCRA case. There's a difference in every way. An FCRA case... Okay, what's the difference? If you were to ask me right now, Your Honor, what happened to Mr. Watkins' credit file? I have no idea. I couldn't possibly know. But if I ask them the question, they will have to tell me. If I say, what procedure of yours resulted in that inaccuracy on his file? They have to tell me. They would have to tell any lawyer that asked that question. And there is no other question to ask. What procedure did you apply to his particular file? And the other thing is, 12 years have passed. And as far as obsolescence go, I don't know about that medical malpractice case. But I can tell you this. There is no way that after 1,500 cases that they've litigated, they have not learned something more about how to defend these cases. It's not possible. Also, if you look at the evidence and what they claim as all of this confidential information that I was supposedly privy to, an issue they raised, and you look at their evidence of it, it isn't there. Read Mr. Schuchat's testimony about what supposedly their strategies are. What's Mr. Schuchat's description of the strategy? Read the complaint. None of that had to happen. And actually, it's not supposed to happen under Rule 1.9. Yeah, I disagree. The former client is not supposed to have to come into court and actually even disclose in general terms the confidential information that's at stake. Your Honor, respectfully, again, I disagree. That's what the rule says. You can't disagree. It's in the face of the commentary. I can disagree, Your Honor. The presumption that you're talking about does not apply until after the substantial relationship has been found. This is all in the description of what makes a new matter substantially related to an old matter. It's all part of the methodology of how the rule is applied and how the Indiana courts apply the rule. Which is, in fact, similar to how other state courts apply the rule. Your Honor, I respectfully disagree. This is exactly the type of matter that is described in Comment 3. Comment 2. It is a factually distinct problem of a type. That is all it is. These FCRA cases are of a type. The same was true in the medical malpractice case. Mr. Cento? Yes. Under your theory, would you have been able to leave Mr. Shuckett's firm and a month later sue TransUnion? I thought so originally. When I first left, I mean, you have to understand, I was in this line representing TransUnion and then subsequently Equifax for years. It was the earliest part of my practice is what I learned how to do. I learned how the FCRA works. And I learned that law. And so I definitely wanted to, but I wasn't sure. So that's why the very first, and this is in the record too, the very first thing that I did was I went to the Indiana. Indiana has an ethics committee. And you can ask them ethical questions. And so I asked the question after about two years of being out. And they weren't sure. So I waited even longer. And I waited as long as I thought was reasonable for me to wait. I've never violated an ethical rule in my life. I've never, I've been accused of it once and was found and didn't even have to respond to that person's complaint. I've never violated an ethical rule. I had no intentions and still have no intentions of violating this one. But the idea that after 12 years, I have some kind of knowledge about anything that helps me in any way, shape or form to litigate a case against them is preposterous. It's just not true. That's how you're holding yourself out to the public. That's the truth, Your Honor. Thank you. Mr. Brown? I'll give you a couple of minutes, two minutes. And I just have two quick points. The first is, as a practical matter, since judges are lawyers before taking the bench, we all know that in defending a client, you find out a myriad of things that are not public knowledge. You talk to employees. In this case, Mr. Chento has defended the deposition of at least two current TransUnion employees. What I find absurd is the notion that you could prepare a witness over a full day for a deposition and not learn anything that isn't covered the next day. If lawyers were that much of a mind reader, I think the practice of law would be a lot different. And as we all know from being on the other side of the table, when we depose a witness and we're looking for information, we don't get everything that there is. We do the best that we can. So this notion that somehow you can represent a client for four years in 250 cases and not learn anything that isn't public knowledge is contrary to our shared experience. And I have no fear of contradiction in that. The second point that I want to make briefly is I wanted to read a quote from the Analytica case Judge Posner wrote. For rather obvious reasons, a lawyer is prohibited from using confidential information that he has obtained from a client against that client on behalf of another one. But this prohibition has not seemed enough by itself to make clients feel secure about reposing confidences in lawyers. So a further prohibition has evolved. A lawyer may not represent an adversary of his former client if the subject matter of the two representations is substantially related, which means if the lawyer could have obtained confidential information in the first representation, that would have been relevant in the second. It is irrelevant whether he actually obtained such information and used it against his former client. And to your point earlier, Judge Hamilton, I submit that that has not changed. That is still the expectation of the public when they hire lawyers, that that lawyer will not turn around 10 years, 20 years later and sue them. There may be circumstances, especially representing individuals, where something being rendered obsolete could occur. But here, unless TransUnion totally changes its system, totally replaces all of its decision makers, then I don't think the passage of time comes into it. Thank you, Mr. Brown. Thank you. Thanks.